IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNIVERSAL ENVIRONMENTAL SERVICES LLC, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Civil Action ) No. 3:13-cv-169-TCB ) |
| SUZETTE JEREZ a/k/a SUZETTE JEREZ NEAL, CARLOS BARRIAS, PETROPIAR LLC, and NATIONAL PETROLEUM CORP, | ) **Jury Trial Demanded** ) ) ) ) |
| Defendants. | ) ) |

## COMPLAINT

NOW COMES Plaintiff, Universal Environmental Services LLC ("UES"), by way of Complaint against Defendants, and avers as follows:

### JURISDICTION AND VENUE

1.

Plaintiff UES is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 411 Dividend Drive, Peachtree City, Georgia 30269.

2.

Defendant Suzette Jerez a/k/a Suzette Jerez Neal ("Jerez") is an individual whose last known personal residence is 1200 W. 136th Street, Burnsville, Dakota County, Minnesota 55337. This

Court has jurisdiction over Jerez pursuant to O.C.G.A. § 9-10-91.

3.

Defendant Carlos Barrias ("Barrias") is an individual whose last known personal residence is 7408 Quail Ridge Drive, Charlotte, Mecklenburg County, North Carolina 28226. This Court has jurisdiction over Barria pursuant to O.C.G.A. § 9-10-91.

4.

National Petroleum Corp ("NPC") is a Minnesota corporation whose principal place of business is 7900 International Drive #200, Bloomington, Minnesota. This Court has jurisdiction over NPC pursuant to O.C.G.A. § 9-10-91.

5.

NPC may be served with process through its registered agent Jerez, who is located at 7900 International Drive #200, Bloomington, Minnesota.

6.

Petropiar LLC ("Petropiar") is a Wyoming corporation whose principal place of business is 7408 Quail Ridge Drive, Charlotte, North Carolina 28226. This Court has jurisdiction over Petropiar LLC pursuant to O.C.G.A. § 9-10-91. Barrias serves as Petropiar's Chief Executive Officer.

7.

Petropiar may be served with process through its registered agent Amy Chambers, who is located at 309 N. Huber Drive, Casper, Wyoming 82609.

8.

This Court has jurisdiction of the subject matter of this action pursuant to 28 U.S.C. § 1332 because this Complaint presents a controversy between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

9.

This Court also has federal question jurisdiction of the subject matter by virtue of 28 U.S.C. § 1331 because Plaintiff has asserted claims under the Federal RICO Act.

10.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a).

**FACTUAL BACKGROUND**

11.

UES is in the business of collecting, transporting and re-refining used oil. UES sells the used and re-refined oil it collects to third parties.

12.

In or around December 2012, UES began negotiating with Jerez, NPC's Chief Executive Officer, for the sale of oil by UES to NPC. Jerez represented to UES that NPC wanted to purchase approximately 50,000 barrels of processed used oil from UES.

13.

In order to induce UES into agreeing to the sale, Jerez repeatedly represented to UES by telephone and e-mail that NPC had sufficient funds available to pay for such oil.

14.

Relying upon Jerez's representations that NPC had funds available to purchase oil, on or about December 20, 2012, UES entered into a contract with NPC in which NPC agreed to purchase 50,000 barrels of processed used oil from UES (the "Contract"). A true and correct copy of the Contract is attached hereto as Exhibit "A."

15.

The Contract was negotiated on behalf of NPC by Jerez.

16.

The Contract provided that UES would deliver the oil, free on board, from UES's tank located at Vopak Terminal in Savannah, Georgia.

17.

The Contract further provided that NPC would make payment to UES via wire transfer within three (3) days of receipt of NPC's receipt of the commercial invoice, the bill of lading, a certificate of quality and quantity by an independent inspector mutually agreed to by NPC and UES, a certificate of origin of the oil, and material safety data.

18.

The Contract also stated that immediately after signing the Contract, NPC and UES would agree on a guarantee of payment, which could be: (1) a letter of credit issued to NPC by a reputable American bank, as agreed to by both UES and NPC; (2) an ACH debit, as agreed to by both UES and NPC; or (3) a fund verification and allocation.

19.

Prior to the execution of the Contract, Jerez notified UES that Petropiar would charter the vessel transporting the Oil. Jerez sent an e-mail to UES in which she represented that NPC was the "equity owner" of Petropiar.

20.

Jerez advised UES by e-mail and telephone that the bill of lading for the Oil should be issued to Petropiar. Jerez and Barrias represented to UES, by e-mail and telephone, that NPC

and Petropiar would each pay 50% of the cost of the Oil. On or about December 26, 2012, Jerez sent UES an email in which she stated that NPC, as "Managing Owner of Petropiar, LLC . . . acknowledges clause 11(a) [of the Contract] and hereby confirms to act according to the conract terms herein."

21.

On or about December 27, 2012, UES delivered approximately 50,000 barrels of oil (the "Oil") to NPC and Petropiar. The Oil was loaded onto the Shannon Star, a cargo ship, in Savannah, Georgia. As requested by Jerez and Barrias, UES issued a bill of lading for the Oil to Petropiar. The bill of lading identified the consignee for the Oil as Empresa Generadora de Electicidad Haina, S.A. ("EGEH").

22.

Around the time that NPC executed the Contract, Jerez represented to UES that she, on behalf of NPC, had contracted with EGEH for sale of the Oil from NPC to EGEH. Barrias also represented to UES that NPC and Petropiar had contracted with EGEH for the sale of the Oil.

23.

Jerez and NPC failed to provide UES with a guarantee of payment prior to the Oil being loaded onto the Shannon Star, as required by the Contract. However, Jerez and Barrias continued

to represent to UES that NPC had sufficient funds available to pay UES for the Oil.

24.

On or about December 28, 2012, UES provided Jerez and NPC a commercial invoice for the Oil, the bill of lading, a certificate of quality and quantity of the Oil, a certificate of origin of the Oil, and material safety data for the Oil.

25.

NPC and Petropiar failed to make payment to UES for the Oil as required by the Contract.

26.

On or about December 31, 2012, the Shannon Star arrived at the Port of Rio Haina, in the Dominican Republic. UES notified Rigel Bereederungs GmbH & Co, KG MT "Shannon Star", the owner of the Shannon Star, that UES had not received payment from NPC for the Oil.

27.

On December 31, 2012, Jerez emailed UES a document that she alleged verified that, on December 30, 2012, NPC had initiated a transfer of $4,799,048.36 from an account in Panama to NPC's account at Wells Fargo Bank. The transfer document contained a notation that the transfer was to pay for the purchase of 54,769.97 barrels of "Fuel Oil."

28.

Between December 31, 2012 and mid-January 2013, Jerez and Barrias continued to represent to UES that NPC and Petropiar had adequate available funds to pay for the Oil, and that they were making arrangements to issue payment to UES for the Oil. Jerez repeatedly represented that a bank in Panama had initiated the process of wiring funds to UES's bank account.

29.

On or about January 10, 2013, after NPC and Petropiar failed to make payment to UES despite numerous assurances that payment was in process, UES recovered possession of the Oil. UES arranged the sale of the Oil to a company located in Denmark and redirected the Shannon Star to transport the Oil from the Dominican Republic to Denmark.

30.

After entering into the contract with NPC, UES learned that Jerez and NPC have engaged in similar misconduct surrounding the sale and purchase of oil with a company located in the Dominican Republic called Generadora San Felipe Limited Partnership ("Generadora San Felipe").

31.

On or about August 2, 2011, Generadora San Felipe filed a lawsuit against Jerez, NPC and a company called World Gas Belize

Limited ("World Gas Belize") in the United States District Court for the District of Minnesota. The Complaint filed in that lawsuit alleged that Jerez, NPC and World Gas Belize entered into two contracts with Generadora San Felipe in which Jerez, NPC and World Gas Belize agreed to sell fuel oil to Generadora San Felipe.

32.

According to the Complaint filed by Generadora San Felipe, World Gas Belize is an assumed name of Jerez.

33.

Generadora San Felipe alleged in its complaint that it paid Jerez, NPC and World Gas Belize $1,726,806.66 towards the purchase price of the oil, but never received the oil from them. Generadora San Felipe demanded that Jerez, NPC and World Gas Belize return the funds to Generadora San Felipe, but Jerez, NPC and World Gas Belize refused to do so.

34.

On or about January 9, 2013, a default judgment was entered by the Minnesota District Court against Jerez, NPC and World Gas Belize in favor of Generadora San Felipe in the amount of $2,146,070.69.

**COUNT I**

**FRAUD**

35.

UES repeats and realleges the allegations of the individually enumerated paragraphs set forth above as if fully set forth herein.

36.

In December 2012, Jerez and Barrias falsely represented to UES that NPC and Petropiar had adequate funds available to purchase the Oil from UES.

37.

Jerez and Barrias made these misrepresentations in order to induce UES into entering into the Contract.

38.

UES reasonably relied upon these misrepresentations in deciding to enter into the Contract with NPC.

39.

Between December 20, 2012 and mid-January 2013, Jerez, NPC, Barrias, and Petropiar repeatedly represented to UES that NPC intended to compensate UES for the Oil and that they had funds available to pay UES for the Oil.

40.

Jerez, NPC, Barrias, and Petropiar falsely represented to UES that NPC had sold the Oil to EGEH.

41.

Jerez, NPC, Barrias, and Petropiar intentionally misrepresented to UES that EGEH had agreed to purchase the Oil in order to induce UES into releasing the Oil to NPC before receiving payment for the Oil.

42.

UES justifiably relied on Jerez's, NPC's, Barrias', and Petropiar's misrepresentations regarding the payment and sale of the Oil to UES's detriment.

43.

Because NPC fraudulently induced UES into entering into the Contract, UES properly rescinded the Contract on or about January 10, 2013, when it recovered possession of the Oil.

44.

Jerez, NPC, Barrias, and Petropiar have engaged in fraudulent conduct and UES has been harmed as a result.

45.

As a result of Defendants' fraud, UES was forced to quickly locate a replacement buyer for the Oil. Because UES had to

quickly locate a replacement buyer, UES was forced to sell the Oil at a discounted price.

46.

NPC had agreed to pay UES $4,416,000.00 for the Oil. UES sold the Oil to the replacement buyer for $3,174,000.00. Therefore, Defendants' fraud caused UES to lose $1,242,000.00.

47.

UES was also forced to pay for the costs incurred with shipment of the Oil from Savannah, Georgia to the Dominican Republic and demurrage charges for the time the Shannon Star was anchored at the Dominican Republic while UES located a replacement buyer for the Oil.

48.

UES paid $1,136,800.00 for shipment from Savannah, Georgia to the Dominican Republic, the demurrage charges and the shipment of the Oil from the Dominican Republic to Denmark, causing UES to incur $684,600.00 in additional shipment and demurrage costs.

## COUNT II

## FEDERAL RICO ACT

49.

UES repeats and realleges the allegations of the individually enumerated paragraphs set forth above as if fully set forth herein.

50.

At all relevant times, Plaintiff was a "person" within the meaning of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961(3) and 1964 (c).

51.

At all relevant times, each Defendant was a "person" within the meaning of RICO, 18 U.S.C. §§ 1961(3) and 1962.

52.

Defendants NPC, Jerez, Barrias, and Petropiar constitute an enterprise within the meaning of RICO, 18 U.S.C. § 1961(4), which was engaged in, and its activities affected, interstate and foreign commerce within the meaning of RICO, 18 U.S.C. § 1962.

53.

Defendants violated RICO, 18 U.S.C. § 1962, by conducting or participating, directly or indirectly, in the conduct of the

enterprise's affairs through a "pattern of racketeering activity" within the meaning of RICO, 18 U.S.C. § 1961.

54.

Specifically, Defendants violated:

(a)  18 U.S.C. § 659 (relating to theft from interstate or foreign shipments) by (1) unlawfully taking goods that were moving in or part of an interstate or foreign shipment, and such goods were valued at over $1,000, with the intent of converting such goods to Defendants' own use; and (2) obtaining the Oil from UES by making repeated fraudulent representations regarding NPC's intent to pay NPC for the Oil with the intent to convert the Oil to their own use;

(b)  18 U.S.C. § 1343 (relating to wire fraud) on more than one occasion by their repeated use of the telephone and Internet in making fraudulent representations to UES regarding NPC's possession of sufficient funds to purchase 50,000 barrels of oil from UES, which constituted a scheme to defraud UES; and

(c)  18 U.S.C. § 2315 on more than one occasion by crossing state lines and/or a United States border with unlawfully converted goods, wares, or merchandise, securities, or money of the value of $5,000 or more.

55.

The acts of racketeering activity referred to above constituted a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5). These acts were related to each other by virtue of common participants, a common method of commission, and the common purpose and common result of defrauding and depriving UES of its property and enriching the Defendants at UES's expense while concealing Defendants' fraudulent activities. This fraudulent scheme has been ongoing since at least July 2010 and is likely still ongoing.

56.

As a result of Defendants' activities, UES has suffered damages, and Defendants are liable to UES for its losses in an amount to be determined at trial.

57.

UES is entitled to recover treble damages plus costs and attorneys' fees from Defendants.

## COUNT III

## GEORGIA RICO ACT

58.

UES repeats the allegations of the individually enumerated paragraphs set forth above and incorporates them herein as if fully set forth.

59.

At all relevant times, Defendants constituted an enterprise as defined by Georgia's Racketeer Influenced Corrupt Organizations Act (the "Georgia RICO" Act), O.C.G.A. § 16-14-3(6).

60.

Defendants have engaged in a least two acts of racketeering activity in furtherance of one or more incidents, schemes, or transactions that have the same or similar intents, results, accomplices, victims or methods of commission or otherwise are interrelated by distinguishing characteristics, and are not isolated incidents. Defendants continue to engage in such racketeering activity.

61.

The predicate acts of these Defendants comprising the racketeering activity asserted herein are as follows:

(a) Theft by deception in violation of O.C.G.A. § 16-8-3, whereby Defendants have obtained property by deceitful means or artful practice with the intention of depriving the owner of the property;

(b) Conduct defined as "racketeering activity" under 18 U.S.C. § 1961; and

(c) Initiation of a deceptive commercial email in violation of O.C.G.A. § 16-9-101.

62.

The foregoing allegations show that Defendants constituted, were associated with, and/or were employed by an enterprise, and that Defendants conducted or participated in such enterprise through a pattern of racketeering activity in violation of the Georgia RICO Act, O.C.G.A. § 16-14-4.

63.

As a result of Defendants' violation of the Georgia RICO Act, UES has sustained injury to its property and is therefore, entitled to an award of treble damages against Defendants.

## COUNT IV

### BREACH OF CONTRACT AGAINST NPC AND PETROPIAR

64.

UES repeats and realleges the allegations of the individually enumerated paragraphs set forth above as if fully set forth herein.

65.

In the event this Court determines that the Contract has not been rescinded, then an enforceable written agreement existed between UES and NPC and Petropiar.

66.

UES performed its obligations under the Contract.

67.

NPC and Petropiar failed to provide UES with payment for the Oil as required by the Contract.

68.

As a result of Defendants' failure to make payment, UES was forced to locate a replacement buyer for the Oil and was forced to sell the Oil for a price $1,242,000.00 less than NPC and Petropiar agreed in the Contract to pay for the Oil.

69.

Defendants' breach caused UES to incur $684,600.00 in additional shipment and demurrage costs.

70.

UES damages were a direct and proximate result of NPC's contractual breach.

**COUNT V**

**PUNITIVE DAMAGES**

71.

UES repeats the allegations of the individually enumerated paragraphs set forth above and incorporates them herein as if fully set forth.

72.

Defendants' conduct was willful, intentional, fraudulent, wanton and was done with such entire want of care as to raise a presumption of conscious indifference to the consequences to UES.

73.

Consequently, Defendants are liable to UES for punitive damages in an amount to be awarded in the enlightened conscience of the jury, sufficient to deter Defendants from similar conduct in the future.

74.

Because the actions alleged herein are willful, intentional and done with a specific intent to harm, there should be no limitation on the amount of punitive damages to be awarded.

**COUNT VI**

**ATTORNEYS' FEES AND LITIGATION EXPENSES**

75.

UES repeats the allegations of the individually enumerated paragraphs set forth above and incorporates them herein as if fully set forth.

76.

Defendants have acted in bad faith, have been stubbornly litigious, and have caused UES unnecessary trouble and expense.

77.

Accordingly, UES is entitled to recover the attorneys' fees and costs incurred in connection with this case pursuant to O.C.G.A. § 13-6-11.

78.

UES is entitled to recover attorneys' fees and costs in connection with Defendants' violation of the Federal and Georgia RICO Acts.

WHEREFORE, Plaintiff UES prays that this Court grant judgment against Defendants Jerez and NPC jointly and severally as follows:

(a) A judgment be entered in UES's favor against Defendants for compensatory damages, including but not limited to, all amounts necessary to compensate UES for Defendants' wrongful activities;

(b) Exemplary damages be awarded in UES's favor based on Defendants' willful and malicious conduct;

(c) The Court award UES its attorneys' fees, costs and expenses in this action; and

(d)   That the Court award any and all other and further relief in law or in equity as it may deem necessary or appropriate in the interest of justice.

This 3rd day of October, 2013.

Respectfully submitted,

**DREW ECKL & FARNHAM, LLP**


s/Joseph C. Chancey
Joseph C. Chancey
Georgia Bar No. 120520
jchancey@deflaw.com
Meredith Riggs Guerrero
Georgia Bar No. 214274
mguerrero@deflaw.com

***Counsel for Plaintiff***

DREW ECKL & FARNHAM, LLP
880 West Peachtree Street
Post Office Box 7600
Atlanta, Georgia  30357-0660
Telephone: (404) 885-1400
Facsimile: (404) 876-0992

3519351/7
05680-084118